**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CIVIL ACTION NO. 08-86-JBC**

**RONALD PEMBERTON,**                                                      **PLAINTIFF,**

**V.**                          **MEMORANDUM OPINION AND ORDER**

**RELIANCE STANDARD LIFE**
**INSURANCE COMPANY,**                                          **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \* \***

This matter is before the court on the plaintiff's motion to remand, DE 24, and on the defendant's motion to dismiss the plaintiff's complaint, DE 4.  The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion, grant the defendant's motion in part and deny it in part, and deny the defendant's request for attorney's fees.

**I.      Background**

This dispute arises from the termination of benefits under a long-term disability ("LTD") insurance policy.  According to the complaint, nearly four years after beginning to pay LTD benefits on November 22, 2003, the defendant informed the plaintiff of its decision to terminate his benefits on June 18, 2007.  Also according to the complaint, the defendant affirmed its decision after an internal appeal on November 1, 2007.  The plaintiff filed suit in Boyle Circuit Court on January 15, 2008, asserting that he is permanently disabled under the terms of the policy and that the defendant (1) wrongfully denied LTD benefits; (2) violated

KRS 304.12-230 by denying Pemberton's LTD benefits in bad faith, without just cause, and with a reckless disregard for his rights; and (3) lacked a reasonable basis to deny Pemberton's benefits and caused emotional and mental distress and inconvenience.  Consequently, the plaintiff seeks attorney's fees, interest, punitive damages, and damages for emotional pain and suffering.  The plaintiff also asserts that the policy in question does not meet the qualifications of a plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), because it falls under the ERISA "safe harbor" provision outlined in Department of Labor regulations.  *See* 29 C.F.R. § 2510.3-1(j).  In the alternative, the plaintiff also pleads that, if the policy is an ERISA plan, the defendant's termination decision was arbitrary and capricious, against the overwhelming evidence provided the defendant, and constituted a breach of fiduciary duty, entitling him to contractual benefits and interest.

The defendant removed the action to this court on February 18, 2008.  On February 20, 2008, the defendant moved to dismiss the plaintiff's complaint.  DE 4.  The plaintiff moved for limited discovery on March 7, 2008, DE 5, and the court granted that motion on June 18, 2008.  DE 15.  After taking limited discovery, the plaintiff filed the motion to remand at issue here.  DE 24.

## II.    Motion to Remand

### A.    Legal Standard

A federal question exists when an action arises "under the Constitution,

laws, or treaties of the United States."  28 U.S.C. § 1331.  "If at any time before

final judgment it appears that the district court lacks subject matter jurisdiction, the

case shall be remanded."  28 U.S.C. § 1447(c).  As the removing party, the

defendant bears the burden of proving the existence of federal jurisdiction.

*Eastman v. Marine Mechanical Corp.,* 438 F.3d 544, 550 (6th Cir. 2006); *Long v.*

*Bando Mfg. of Am. Inc.*, 201 F.3d 754, 757 (6th Cir. 2000).  Removal statutes are

construed narrowly, and doubts about the propriety of removal are resolved in favor

of remand.  *Long*, 201 F.3d at 757*.*

> **B.    Analysis**

The plaintiff claims that the defendant failed to meet its burden of

establishing subject-matter jurisdiction by proving that a federal question exists.

The defendant asserts that the LTD policy is a plan regulated by ERISA, which

creates federal-question jurisdiction.

A court must undertake the following three-step factual inquiry in order to

determine whether a policy qualifies as an ERISA plan:

> First, the court must apply the so-called "safe harbor" regulations established
> by the Department of Labor to determine whether the program was exempt
> from ERISA.  Second, the court must look to see if there was a "plan" by
> inquiring whether from the surrounding circumstances a reasonable person
> could ascertain the intended benefits, the class of beneficiaries, the source of
> financing, and procedures for receiving benefits.  Finally, the court must ask
> whether the employer "established and maintained" the plan with the intent
> of providing benefits to its employees.

*Thompson v. American Home Assur. Co.*, 95 F.3d 429, 434-35 (6th Cir.  1996)

(internal citations and quotations omitted).

1.    *"Safe Harbor" Provisions*

According to the ERISA "safe harbor" regulations, a "group or group-type insurance program[]" does not qualify as an "employee welfare benefit plan" or a "welfare plan" under ERISA if the following four-prong test is met:

> (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy to employees, to permit the insurer to publicize the policy to employees, collect premiums though payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

*Thompson*, 95 F.3d at 435 (citing 29 C.F.R. § 2510.3-1(j)).  A policy must meet all four criteria to qualify for the safe-harbor exemption.  *Thompson*, 95 F.3d at 435.

a.    *Whether the employer made a contribution to the policy*

In order to satisfy the first prong of the "safe harbor" analysis, the employer must not have made any contribution to the policy.  *See* 29 C.F.R. § 2510.3-1(j). The plaintiff contends that because his employer, the Edward C. Levy Company ("Levy"), did not pay any premiums for the LTD coverage, the employer should not be considered to have contributed to the policy.  However, the defendant asserts that even if Levy paid no premiums, Levy contributed to the policy by subsidizing other benefits in the Edward C. Levy Company Medical Plan ("Medical Plan").

Component policies of an overall benefits plan cannot be considered independent of the plan for "safe harbor" analysis purposes.  *See Gaylor v. John Hancock Mutual Life Ins. Co.,* 112 F.3d 460, 463 (10th Cir.  1997); *Postma v.*

4

*Paul Revere Life Ins. Co.*, 223 F.3d 533, 538 (7th Cir. 2000) ("For purposes of determining whether a benefit plan is subject to ERISA, its various aspects ought not be unbundled."); *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1345 (11th Cir. 1994); *Metoyer v. American International Life Assurance Co. of New York*, 296 F.Supp.2d 745 (S.D. Tex. 2003) ("The precise factual question thus presented is whether the Policy is merely a component of the total package of benefits . . . and subsidized by the company, or whether it is completely separated from the . . . benefits package."). Reliance Standard points to significant evidence that shows that the LTD policy was viewed as just another component of the Medical Plan. First, Nancy Hughes, Levy's benefits administrator, sent correspondence regarding LTD coverage on Medical plan letterhead. DE 23-2 (Exhibit A - Excerpts of Deposition of Nancy Hughes at p. 30). Hughes also testified that she considered the LTD coverage to be part of the overall employee benefit plan. DE 23-2 (Exhibit A - Excerpts of Deposition of Nancy Hughes at p. 43). Furthermore, the enrollment form used for the Medical Plan mentioned the LTD policy, DE 23-2 (Exhibit A - Excerpts of Deposition of Nancy Hughes, Exhibit 2), and Levy included the LTD coverage as an optional benefit of the Medical Plan in its Explanation of Benefits document, DE 23-2 (Exhibit A - Excerpts of Deposition of Nancy Hughes, Exhibit 4). Lastly, Stearns wrote "whoever gets Life will get LTD on 800 lives" in her attempt to convince an underwriter to offer a lower rate than a competitor. DE 26-5 (Exhibit B, Stearns Deposition Excerpts, Exhibit 14). This

5

shows that Levy and Stearns were negotiating for life and LTD coverage as part of the same deal.  While Levy's employees would later have the option of choosing to purchase LTD coverage or voluntary life insurance, only the company that had the lowest bid for life insurance, which is a mandatory benefit of the Medical Plan, would have the opportunity to present its LTD policy to the employees.  By including the LTD policy in its negotiations for life insurance, Levy inextricably linked the LTD policy to the Medical Plan.  Therefore, when the court looks at the entire Medical Plan to determine whether the employer made a contribution, the court finds that Levy contributed to the Medical Plan.  Thus, the first prong of the "safe harbor" test is not met.  Because all four prongs of the "safe harbor" test must be met for the "safe harbor" regulations to apply, the court could end its discussion of the "safe harbor" test at this time.  However, the court will explain its analysis of the other three prongs.

> b.    *Whether participation in the policy was completely voluntary*

The second prong of the "safe harbor" analysis requires that participation in the policy must have been completely voluntary.  There is no evidence that Pemberton was required to purchase LTD coverage.  However, Reliance Standard contends that the LTD insurance was not completely voluntary because Levy had agreed that a minimum of seventy-five percent of its eligible employees would participate in the LTD policy.

Without more, the minimum participation requirement does not prove either

6

voluntariness or its absence.  *See, e.g., Ames v. Jefferson Pilot Financial Co.*, 515

F.Supp.2d 1050 (D.Ariz. 2007) (finding employee participation voluntary despite

minimum participation requirements); *Chamblin v. Reliance Standard Life Ins. Co.*,

168 F.Supp.2d 1168 (N.D. Cal.  2001) (finding lack of voluntariness because of

minimum participation rate requirement); *Steiner v. Fortis Benefits Ins. Co.*, 2000

WL 877013 at *1 (E.D. La. 2000) (finding suggestion of voluntariness because of

minimum participation requirement, but deeming evidence insufficient to determine

whether "safe harbor" provision applied).  Thus, the court must look beyond the

minimum participation agreement.

Beyond that agreement in the instant case, Hughes testified that the LTD

policy was voluntary and the employees could choose whether to sign up for it.  DE

24-4 (Exhibit 2 - Hughes Deposition Excerpts at 5-6).  Hughes also denied that

Levy ever forced employees to purchase long-term insurance.  *Id.* at 22. More

importantly, Hughes stated that she was unaware of a minimum participation rate.

*Id.* at 59-60.  In his affidavit, Pemberton confirmed that he was told by his

employer that the LTD insurance was completely voluntary.  DE 8-3 (Affidavit of

Plaintiff Ronald Pemberton).  While, under certain circumstances, minimum

participation rates may prevent a policy from being considered "completely

voluntary," the mere presence of the rate in this case is too insignificant to affect

the voluntariness prong.  If the employer's benefits administrator did not know

about the rate, there is no reason for the court to infer that the employer exerted

7

any influence over the employees in order to persuade them to purchase the LTD coverage.  Even though the minimum participation rate was met, the defendant did not present any evidence that the employer had acted to facilitate this occurence. Thus, Pemberton's participation in the LTD coverage was completely voluntary, and the second prong of the "safe harbor" test is satisfied.

### c.   Whether Levy endorsed the policy

The next prong of the "safe harbor" test requires the court to determine whether Levy endorsed the LTD policy.  "[T]he relevant framework for determining if endorsement exists is to examine the employer's involvement in the creation or administration of the policy from the employees' point of view." *Thompson*, 95 F.3d at 436-37.  "[A] finding of endorsement is appropriate if, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the creation or administration of the plan." *Id.* at 436.  "[I]n evaluating an employer's role in the creation and administration of a plan, emphasis should be placed on those circumstances which would allow an employee to reasonably conclude that the employer had compromised its neutrality in offering the plan." *Id.* at 437.  The factors "for courts to use in determining whether an employer behaved neutrally towards a plan" are:

> (1) Has the employer played an active role in either determining which employees will be eligible for coverage or in negotiating the terms of the policy or the benefits thereunder?
>
> (2) Is the employer named as the plan administrator?

8

(3) Has the employer provided a plan description that specifically refers to ERISA or that the plan is governed by ERISA?

(4) Has the employer provided any materials to its employees suggesting that it has endorsed the plan?

(5) Does the employer participate in processing claims?

*Booth v. Life Ins. Co. of North America*, 2006 U.S. Dist. LEXIS 82856, at *6-7

(W.D.Ky. 2006) (citing *Thompson*, 95 F.3d at 437). A finding of the applicability

of one or more of these factors "may" support a finding that the policy was

endorsed. *Id.* at *7. Moreover, endorsement can be either a factual or legal issue:

> The question of endorsement *vel non* is a mixed question of fact and law. In some cases the evidence will point unerringly in one direction so that a rational factfinder can reach but one conclusion . In those cases, endorsement is a question of law. . . . In other cases, the legal significance of the facts is less certain, and the outcome will depend on inferences that the factfinder chooses to draw. . . . In those cases, endorsement becomes a question of fact.

*Thompson*, 95 F.3d at 437 (citing *Johnson v. Watts Regulator Co.*, 63 F.3d 1129

(1st Cir. 1995) (citations omitted)) (quotation marks omitted).

> I.    *Role of Levy in determining terms and eligibility of coverage*

First, the court must examine the role the employer had in determining the

terms of the coverage and who would be eligible for coverage. The plaintiff argues

that Levy merely accepted standard terms offered by Reliance Standard and did not

negotiate for any specific term. The defendant rebuts this assertion by offering

evidence that Hughes required Reliance Standard to change several terms before

she would accept the LTD policy. Hughes insisted that Reliance Standard keep the

9

waiting period at 30 days and the elimination period at 90 days.  DE 26-2 (Exhibit A, Part 1 of 3, Hughes Deposition Excerpts at 58-59).  When Reliance Standard submitted a summary of the LTD benefit that contained a "full family" offset provision, Hughes marked through it and wrote in "70 percent all sources."  *Id.* at 57-58 and Exhibit 24.  Her reasoning for these alterations was to insure that the employees did not lose any benefits.  *Id.* at 58.  In addition to these changes, Hughes also had Reliance Standard increase the maximum amount of monthly benefits payable under the LTD policy from $3,300 to $4,200 and then to $5,000. DE 26-2 (Exhibit A, Hughes Deposition at 18).

Levy has offered a voluntary LTD group policy to its employees for several years.  Even though the carrier changed over time, Levy required the new carriers to match the terms of the previous contract exactly. DE-26-5 (Exhibit B, Stearns Deposition Excepts, Exhibit 14).  This is another example of how Levy actively negotiated the terms of the LTD policy.  Even though Stearns could not recall Hughes ever negotiating a specific term for the LTD policy and Hughes testified that she did not negotiate for specific terms, the evidence presented above reveals otherwise.

Hughes's actions show that she was not merely advising Levy's employees of the existence of a group policy that was available through a third party.  Instead, she was substantially involved in creating the plan.  Hughes's extensive involvement in negotiating the terms of the plan negates Levy's neutrality toward

10

the LTD coverage and amounts to an endorsement of it.  A reasonable employee would view Hughes's negotiation as an endorsement.

For the second part of this factor, both parties agree that Levy was not involved in determining whether individual employees were eligible for LTD coverage.  However, the defendant argues that through its involvement in setting the criteria for eligibility, Levy must be considered to have determined the eligibility of employees.  The court is not persuaded by this argument.  The defendant failed to present any evidence that showed that Levy insisted on limiting the LTD policy to non-union, full-time employees.  Furthermore, it is unlikely that a reasonable employee would view this eligibility requirement as an endorsement by Levy. Because the employment relationship of union and non-union workers is governed by different agreements, it is not uncommon for them to receive different benefits. Without additional evidence, the court cannot find that Levy played a role in determining which employees were eligible to participate in the LTD policy.

> ii.   *Whether the employer was listed as the plan administrator*

"[W]here the employer is named as the plan administrator, a finding of endorsement may be appropriate."  *Thompson*, 95 F.3d at 436.  However, "an employer can be a plan administrator in name only and still satisfy the four requirements of the safe harbor regulation. . . ."  *Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1153 (9th Cir.  2000) (citing *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118 (9th Cir. 1998).  While Levy was the named plan

administrator for the LTD policy, there is no evidence to suggest that Levy actually performed any duties, other than ministerial ones, as plan administrator.  Reliance Standard made all decisions for benefits under the LTD policy and served as "claims review fiduciary with respect to the [LTD] insurance policy."  DE 22-3 (Exhibit 2, Deposition of Hughes at 22) and DE 4-3 (Reliance Standard policy at 6.0).  As discussed above, Levy was not involved in determining the eligibility of employees for the LTD policy.  Finally, "[a]ctivities such as issuing certificates of coverage and maintaining a list of enrollees are plainly ancillary to a permitted function (implementing payroll deductions)."  *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1136 (1st Cir.  1995).  Therefore, this factor is inconclusive as to whether Levy endorsed the policy.

> ### iii.    Mention of ERISA in the plan description

An additional factor in determining whether an employer endorsed a group policy is whether the plan description mentions ERISA.  According to *Thompson*, "where the employer provides a summary plan description that specifically refers to ERISA in laying out the employee's rights under the policy or that explicitly states that the plan is governed by ERISA, the employee is entitled to presume that the employer's actions indicate involvement sufficient to bring the plan within the ERISA framework."  95 F.3d at 437.  In this matter, the policy summary includes a section entitled "ERISA STATEMENT OF RIGHTS," which states "[a]s a participant in the Group Insurance Plan, you *may* be entitled to certain rights and protections in

the event that the Employee Retirement Income Security Act of 1974 (ERISA) applies." DE 26-7 (Exhibit A, Part 2 of 3, Summary Plan Description) (emphasis added). While courts have found that employees should be able to rely on statements in policy documents regarding ERISA protections, the section in the Reliance Standard policy was only conditional and did not definitively state that the policy was an ERISA plan. Because Reliance Standard did not unequivocally declare that the LTD policy was covered by ERISA, the presence of the "ERISA STATEMENT OF RIGHTS" section does not entitle Levy's employees to presume that the LTD policy was an ERISA plan.

> iv.  *Whether Levy provided materials suggesting it had endorsed the LTD policy*

Next, the court will examine whether Levy provided materials to employees suggesting it had endorsed the LTD policy. In many cases, courts have looked to see if the company's logo appears on any documents associated with the policy. *See Ackerman v. Fortis Benefits Ins. Co.*, 254 F.Supp.2d 792 (S.D. Ohio 2003). While Levy's logo does not appear on any LTD policy documents, there are other materials that suggest Levy has endorsed the LTD coverage. Enrollment information and forms for the Medical Plan contained information about the LTD policy. DE 26-2 (Exhibit A, Hughes Deposition, Exhibits 2 and 4). Furthermore, Hughes testified that she used Medical Plan stationery to correspond with employees about the LTD coverage. DE 26-2 (Exhibit A, Hughes Deposition at 30). The court finds that a reasonable employee viewing these materials would assume

13

that Levy had endorsed the LTD policy along with the rest of the Medical Plan.

> ## v.   *Whether the employer participated in processing claims*

The final factor requires the court to evaluate the level at which the employer participated in processing claims.  According to Hughes, once an employee had a claim, the employee would deal directly with Reliance Standard.  DE 23-2 (Deposition of Hughes at 44-46).  Moreover, all claims forms were created by Reliance Standard.  DE 24-4 (Exhibit 2 - Hughes Deposition Excerpts at 33-34).  As the court previously mentioned, Reliance Standard made all decisions for benefits under the LTD policy and served as "claims review fiduciary with respect to the [LTD] insurance policy."  DE 22-3 (Exhibit 2, Deposition of Hughes at 22) and DE 4-3 (Reliance Standard policy at 6.0).  It is clear that Levy only had a minor role in processing claims.

In conclusion, after analyzing the relevant factors, the court finds that Levy endorsed the LTD policy.  The factors favoring a finding of endorsement are so compelling that they outweigh those disfavoring endorsement.  Because of the extensive involvement of Levy in setting the terms of the LTD policy and Levy's use of materials suggesting that it endorsed the policy, a reasonable employee in the surrounding circumstances would presume that Levy had endorsed the LTD policy.  Thus, under this prong, the "safe harbor" test is not met.

> ### d.   *Whether Levy received any consideration regarding the policy*

Because Reliance Standard does not contest the fact that Levy received no

14

consideration in regards to the LTD policy, the court will presume that the final prong of the "safe harbor" test has been met.

### 2.    Whether an ERISA "Plan" Exists

Even though the "safe harbor" regulations are inapplicable to the LTD policy, ERISA will apply, and thus federal jurisdiction will exist, only if a "plan" exists.  A "plan" exists if "from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Int'l Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir. 1991) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir.  1982)), *cert. denied*, 504 U.S. 973 (1992).  As previously discussed, the court will review the Medical Plan as a whole to see if a "plan" exists. Considering the surrounding circumstances in this case, the court finds that a reasonable person would be able to ascertain that all of the elements of a "plan" are present.  It is clear that (1) the intended benefits of the Medical Plan include medical, dental, short-term disability, life, and long-term disability coverage; (2) the intended beneficiaries are full-time, non-union employees of Levy; (3) Levy and individual employees will finance the plan by paying premiums; and (4) the procedures for receiving benefits are delineated in the policy, DE 23-2 (Exhibit A, Hughes Deposition, Exhibit 25).  Therefore, the Medical Plan, including the LTD coverage, meets the definition of "plan."

Even if the court considered only the LTD policy, there is ample evidence to

support the finding of a "plan."   Applying the *International Resources* test to the

LTD policy, it is evident that a plan exists.   First, intended benefits are long-term

disability benefits.   Second, the intended beneficiaries are full-time, non-union

employees of Levy.   Third, the individual employees serve as the source of

financing by paying premiums.   Finally, the procedures for receiving benefits are

delineated in the policy, DE 23-2 (Exhibit A, Hughes Deposition, Exhibit 25).

Because all four elements of an ERISA "plan" are present, the LTD policy would be

considered a "plan" even if it is considered separately from the Medical Plan.

### 3.    Whether Levy "Established or Maintained" the Plan

The court has concluded that the "safe harbor" regulation does not exempt

the LTD policy from ERISA and that a "plan" exists, thus meeting two of the three

steps toward concluding that the LTD policy is covered by ERISA, so as to confer

federal jurisdiction.   The final step in examining whether the policy is governed by

ERISA is to determine if the employer "established or maintained the plan with the

intent of providing benefits to its employees."   *Thompson*, 95 F.3d at 435.   This

analysis "should [focus] on the employer . . . and [its] involvement with the

administration of the plan."   *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 978

(5th Cir.  1991).   In *McDonald v. Provident Indemnity Life Ins. Co.*, 60 F.3d 234

(5th Cir.  1995), the Fifth Circuit found that an employer "'established or

maintained' the plan for the purpose of providing benefits to its employees"

because it "purchas[ed] the insurance, select[ed] the benefits, identif[ied] the

employee-participants, and distribut[ed] enrollment and claims forms." *Id.* at 236 (footnote omitted).

Like the employer in *McDonald*, Levy selected the benefits and distributed enrollment forms.  Also, Levy purchased part of the insurance.  As previously discussed, the LTD policy must be considered along with the entire Medical Plan.  Therefore, by contributing to certain costs in the Medical Plan, Levy purchased part of the insurance even though it did not pay for LTD premiums.  Furthermore, Hughes stated "[w]e didn't want to take any benefit away from the employee," which indicates that Levy's purpose was to provide benefits to its employees.  DE 23-2 (Exhibit A - Excerpts of Deposition of Nancy Hughes at 58).  Thus, Levy "established or maintained" the plan.

### 4. Conclusion

Because the court has found (1) that the "safe harbor" provisions do not apply because Levy contributed to the LTD policy by subsidizing other benefits in the Medical Plan and endorsed the LTD coverage, (2) that the LTD policy is an ERISA "plan," and (3) that Levy "established and maintained" the LTD policy, the court concludes that the LTD policy at issue here is governed by ERISA.  Consequently, the court retains subject-matter jurisdiction based on a federal question, and the motion to remand must be denied.

### III.    Defendant's Motion to Dismiss

### A.    Legal Standard

17

The defendant's motion is under Fed. R. Civ. P. 12(b)(6) and 56. "If on a

12(b)(6) motion, 'matters outside the pleadings are presented to and not excluded

by the court, the motion shall be treated as one for summary judgment.'" *CGH*

*Transport, Inc. v. Quebecor World, Inc.*, 261 Fed.App'x 817, 822 (6th Cir. 2008)

(citing Fed. R. Civ. P. 12(b)). However, "[a] district court must provide a party with

an opportunity to respond with relevant evidence before converting a motion to

dismiss pursuant to Rule 12(b)(6) into a motion for summary judgment." *Id.* (citing

*Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 493 (6th Cir. 1995)). *See also id.*

at 822 n.8 (finding that, where the non-moving party "submitted evidence along

with its opposition, it had an opportunity to respond and submit relevant

evidence"). Because the court allowed the parties to conduct limited discovery and

both the defendant and the plaintiff submitted attachments with their supplemental

memoranda, the court will convert the present motion into a motion for summary

judgment and apply the standards of Fed. R. Civ. P. 56.

"Summary judgment is proper where there are no genuine issues of material

fact in dispute and the moving party is entitled to judgment as a matter of law."

*Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (citing Fed. R. Civ. P. 56(c)).

"One of the principal purposes of the summary judgment rule is to isolate and

dispose of factually unsupported claims or defenses . . . ." *Celotex Corp.*, 477

U.S. at 323. In deciding the motion, the court must view the evidence and draw all

reasonable inferences in favor of the non-moving party. *Id.* A judge is not to

"weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  A genuine issue exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Browning*, 283 F.3d at 769 (quoting *Anderson*, 477 U.S. at 252).

### B.  Analysis

The defendant asserts that plaintiff's state-law claims must be dismissed because they are preempted by ERISA.  "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)], and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely preempted by ERISA § 502(a)(1)(B) [29 U.S.C. § 1132(a)(1)(B)]." *Aetna Health Inc. v. Davila*, 124 S.Ct. 2488, 2496 (2004).

Even if claims survive preemption under 29 U.S.C. § 1132, "Section 1144(a) preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan" governed by ERISA." *Thurman v. Pfizer*, 484 F.3d 855, 861 (6th Cir. 2007) (emphasis added).  Furthermore, "[a] state law may be preempted by ERISA's express preemption provision even if the law is not specifically designed to affect benefit plans, or the effect is only indirect." *Id.* (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990).  Under this reasoning, "even general state contract and tort laws may also be preempted by

ERISA." *Id.*

While the scope of ERISA preemption is quite broad, the effect of some state laws on employee benefit plans is "too tenuous, remote, or peripheral" to "relate to" ERISA-governed plans. *Id.* (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21 (1983)).  When "deciding whether a state law claim is too remote to be preempted by ERISA," the Sixth Circuit has "focus[ed] on whether the remedy sought by the plaintiff is primarily plan-related." *Id.* (citing *Marks v. New Court Credit Group, Inc.*, 342 F.3d 444, 453 (6th Cir.  2003)).

In the instant case, Pemberton claims that Reliance Standard (1) wrongfully denied LTD benefits; (2) violated KRS 304.12-230 by denying Pemberton's LTD benefits in bad faith, without just cause, and with a reckless disregard for his rights; (3) lacked a reasonable basis to deny Pemberton's benefits and caused emotional and mental distress and inconvenience; and (4) in the alternative, breached its fiduciary duty owed to the plaintiff by arbitrarily and capriciously denying the LTD benefits.

Under ERISA, a participant in a plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Because the plaintiff's state-law claim for wrongful denial of benefits clearly falls within Section 1132(a)(1)(B) of ERISA as a claim seeking to enforce rights under the terms of the plan, it is completely

20

preempted.  *See Harvey v. Life Ins. Co. of North America*, 404 F.Supp.2d 969, 974 (E.D.Ky.  2005) (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-67 (1987)).

The plaintiff's bad-faith claim is preempted as well.  Because the court must look to the terms of the policy in order to determine whether the denial of benefits was made in bad faith, the claim "relates to" the LTD coverage.  Bad faith laws are rules of general applicability and are not specifically directed at the insurance industry, and therefore, they are not protected by the preemption savings clause. *See Pilot Life Insurance Co. v. Dedeaux*, 481, U.S. 41, 50-51 (1987) (holding bad-faith claim based on Mississippi common law was preempted by ERISA).

Finally, in enacting ERISA, Congress limited the participants' remedies when suing a plan fiduciary.  The plaintiff is seeking attorney's fees, interest, punitive damages, and damages for emotional pain and suffering.  Under ERISA, damages for emotional distress and punitive damages are unavailable.  *See Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 377 (2002) (citing *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985)); *Pilot Life Ins. Co.*, 481 U.S. at 53. Since punitive damages and damages for emotional pain and suffering are not recoverable under ERISA, they are preempted.  Under certain circumstances, prejudgment interest on benefits wrongly withheld and attorney's fees may be awarded under ERISA. *See Wells v. U.S. Steel*, 76 F.3d 731, 737 (6th Cir.  1996). Therefore, these damages may be permitted if the plaintiff succeeds in an ERISA

claim.

Because the plaintiff's state-law claims are preempted by ERISA as a matter of law, the only genuine issue of material fact that exists is whether Reliance Standard's denial of benefits violated ERISA.  Therefore, the motion to dismiss, treated as a motion for summary judgment, must be granted in part.  Plaintiff's state-law claims are dismissed, and the only claims that remain are those pleaded in the alternative, which allege that Reliance Standard breached its fiduciary duty under ERISA.

**IV.     Defendant's Request for Attorney's Fees**

The defendant argues that the plaintiff's motion is frivolous and is so lacking in support that the defendant should be awarded its fees and costs for traveling to Detroit for depositions and for briefing the issues.  The court disagrees.  The determination of whether an insurance policy is an ERISA plan is a fact-intensive process.  The court recognized this fact when it granted the plaintiff's motion for limited discovery. Regarding defendant's contention that the plaintiff improperly treated the LTD policy as a separate plan instead of considering it as part of the Medical Plan, the court finds that this is not a sufficient reason for the court to grant attorney's fees.  The defendant never presented any mandatory authority from the Sixth Circuit that supported its proposition that an employer's paying for other policies mandates a finding that the employer has made a contribution to a policy the plaintiff paid.  While the court ultimately found the defendant's argument

persuasive, it was necessary for the parties to conduct discovery to further develop their arguments.  The court finds that the plaintiff's arguments were neither frivolous nor lacking in support.  Therefore, an award of attorney's fees would be inappropriate.

**IV.    Conclusion**

Accordingly,

**IT IS ORDERED** that the plaintiff's motion to remand, DE 24, is **DENIED**.

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss the plaintiff's complaint, DE 4, is **GRANTED IN PART** to the extent that the plaintiff's state-law claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss the plaintiff's complaint, DE 4, is **DENIED IN PART**, and the plaintiff may proceed with its alternative claims based on ERISA.

**IT IS FURTHER ORDERED** that the defendant's request for attorney's fees is **DENIED**.



Signed on  September 30, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY