UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 08-86-JBC

RONALD PEMBERTON,                                                                          PLAINTIFF,

V.                            MEMORANDUM OPINION AND ORDER

RELIANCE STANDARD LIFE
INSURANCE COMPANY,                                                                         DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the parties' cross motions for summary judgment (R.42, 44).  The motions will be **DENIED** and the case will be **REMANDED** for further consideration.

I. Factual and Procedural Background

This dispute arises from the termination of benefits under a long-term disability ("LTD") insurance policy.  The policy provides benefits for a 24-month period if an insured cannot perform "the material duties of his/her regular occupation" (the "own occupation" period)."  AR 60.  Following that period, the benefits will be terminated unless the insured cannot perform the material duties of "any occupation."  *Id.*  "Any occupation" is defined as "one that the insured's education, training, or experience will reasonably allow."  *Id.*  The policy goes on to note that an insured is considered "totally disabled" if "due to Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part

-1-

of the material duties on a Full-time basis." *Id.*

The defendant, Reliance Standard National Insurance Company, notified the plaintiff, Ronald Pemberton, that his claim for LTD benefits was approved on March 1, 2004.  AR 70.  Although this was not stated in the notification letter, these benefits were approved under the "own occupation" provision.  On March 13, 2004, the Social Security Administration ("SSA") notified Pemberton that his application for disability benefits was approved and that it considered him totally disabled as of August 26, 2003.  AR 215.  Pemberton notified Reliance of his Social Security award on March 26, 2004 (AR 69), and sent it a check on March 30, 2004 for a portion of the Social Security offset (AR 222).

Toward the end of the "own occupation" period, Reliance began evaluating whether Pemberton would be eligible for benefits under the "any occupation" standard.  Reliance notified Pemberton on April 18, 2007 that he would no longer be eligible for benefits.  In that letter, Reliance noted findings from Dr. Jacqueline Carter, Pemberton's former neurologist, that appear to date back to 2005.  AR 28.  Reliance reviewed this decision based on additional medical records from Pemberton's more recent neurologist, Dr. Thomas Johnson, and reiterated its termination decision on June 18, 2007.  AR 19-22.  Pemberton appealed the decision, and his appeal was rejected on November 1, 2007.  AR 83-85.

**III.   Legal Analysis**

The parties agree that the plan gives the defendant discretionary authority to

determine eligibility for benefits. Accordingly, this court must apply the highly deferential "arbitrary and capricious" standard of review. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 875–76 (6th Cir. 2006). Under this standard, the defendant's decision to terminate plaintiff's LTD benefits will be upheld if "it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).

### A. The SSA Disability Determination

The defendant's failure to adequately consider the plaintiff's SSA determination weighs in favor of finding that the defendant's decision was arbitrary and capricious. None of the defendant's correspondence to the plaintiff regarding its termination of his disability benefits mentions the SSA's determination. Nor did any of the medical opinions or reviews upon which the defendant relied explain the discrepancy between its decision and that of the SSA. Although there is no technical requirement to explicitly distinguish a favorable Social Security determination in every case, the Sixth Circuit explained in *Bennett v. Kemper Nat'l Serv. Inc.* that

> if the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary and capricious.

514 F.3d 547, 554 (6th Cir. 2008). The instant case meets each of these criteria. First, the defendant encouraged the plaintiff to apply for Social Security benefits (AR 75-76) and later offered to provide in-house assistance for obtaining benefits (AR 70-71). Second, the defendant offset its payments based on his estimated Social Security benefits (AR 70), and received notification when SSA granted the plaintiff's application for disability payments (AR 69). Despite knowing about and benefitting financially from the SSA's payments, Reliance does not mention in any of the correspondence to the plaintiff that it considered the SSA determination at all when deciding to terminate Pemberton's benefits. As in *Bennett*, the defendant's silence regarding the SSA disability determination weighs against finding that the defendant engaged in a "deliberate, principled reasoning process." *Id.* at 554 (citation omitted). Having benefitted financially from the government's determination that the plaintiff was totally disabled, the defendant was obligated to weigh that determination. *Glenn v. Metro. Life Ins. Co.*, 461 F.3d 660, 669 (6th Cir. 2006), *aff'd* 128 S. Ct. 2343 (2008). "Although this failure does not render the decision arbitrary per se, it is obviously a significant factor to be considered upon review." *Id.*

    **C.**    **Conflict of Interest**

A conflict of interest exists when the entity that administers the ERISA plan (1) determines whether an employee is eligible for benefits under the plan and (2) pays those benefits out of its own funds. *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct

2343, 2346 (2008).  Where such a conflict of interest exists, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator abused its discretion in denying benefits."  *Id.*  The significance of the conflict varies from case to case and constitutes a more important factor where "circumstances suggest a higher likelihood that it affected the benefits decision."  *Id.* at 2348-50.  In the instant case, the fact that the defendant benefitted financially from the SSA determination and later ignored the Agency's findings justifies a higher degree of concern about this conflict.  *Id.* at 2352.

> **D.    Medical Evidence**

The first termination letter identifies cervical spondylosis as Pemberton's medical condition. AR 27-30.  Although he was diagnosed with this condition, he sought LTD benefits for vertigo, not for his cervical spondylosis.  In fact, at least one doctor has suggested that the two are likely unrelated (AR 348).  The first termination letter also states that the termination decision was based in part on a residual employability analysis (REA) which indicated that Pemberton was not "totally disabled" as defined by the LTD policy. AR 27-30.  That REA was based on a questionnaire completed by Dr. Carter on April 12, 2005, in which Dr. Carter identified several activities that the plaintiff could perform on an occasional basis and indicated both that he could work at a "light lift" exertion level and also that he had a range of upper-extremity functionality.  AR 382-83.  The form provided space for Dr. Carter to indicate whether any other factors affected the plaintiff's

physical abilities, but she left that portion blank. *Id* at 383. Yet in a supplemental report provided to Reliance dated just three days later, Dr. Carter indicated that Pemberton was permanently "totally disabled" (AR 388) and could "never" resume employment (AR 389). Dr. Carter had reached a similar conclusion in a form provided to Reliance in late 2003. AR 246-27. Reliance made no attempt to clarify the discrepancy between the capabilities Dr. Carter identified and her conclusions that the plaintiff's permanent disability precluded him from returning to work.

Reliance's review of Pemberton's claim did not stop there, however. Reliance conducted a second REA after receiving additional records, including those from Dr. Johnson. AR 202. Pemberton began seeing Dr. Johnson in 2006. Dr. Johnson's neurological evaluation from February 2006 states his impression that the plaintiff has intractable benign positional vertigo. AR. 348. Dr. Johnson conducted a follow-up evaluation in August 2006. In response to the plaintiff's complaints of upper-limb electrical shock sensations and numbness (AR 379), Dr. Johnson ordered tests for carpal tunnel syndrome, which came back normal (AR 337 ). Dr. Johnson examined Pemberton again in June 2007. In that evaluation he noted that Pemberton had "chronic dizziness and vertigo and chronic upper and lower limb paresthesia (sic) and pain." AR 337. He concluded that although Pemberton's neurological evaluation was normal, "his subjective symptoms of vertigo and paresthesia (sic) would limit him in carrying out activities involving

construction, climbing, bending and twisting." *Id.*

Instead of providing rehabilitative services with Dr. Johnson's June 2007 evaluation, Reliance merely provided rehabilitative services with a summary prepared by Marianne Lubrecht, RN, of that evaluation.  AR 202-04.  Specifically, Nurse Lubrecht disclosed only Dr. Johnson's statement regarding Pemberton's subjective symptoms of vertigo and paresthesia and his limited ability to engage in activities involving construction, climbing, bending, and twisting.  AR 202.  Notably absent from this summary was Dr. Johnson's impression of "chronic dizziness and vertigo and chronic upper and lower limb paresthesia (sic) and pain."  AR 362.  It is not clear why Reliance did not send Dr. Johnson's evaluation or any additional information in Pemberton's file to rehabilitative services.  In *Spangler v. Lockheed Martin Energy Systems, Inc.,* the defendant similarly only provided the consultants performing the REA with select information that supported its denial of benefits. 313 F.3d 356, 362 (6th Cir. 2002).  The Sixth Circuit explained that it could only conclude that the defendant "cherry-picked" the plaintiff's file in the hopes of obtaining a favorable report from the vocational consultant as to the plaintiff's ability to work, and that the defendant should have provided the consultants with "all of the medical records relevant to [plaintiff's] ability to work."  *Id.*  In the instant case, it is possible that if Reliance had disclosed additional medical information, that information may not have affected the outcome of the REA.  The issue here, however, is whether Reliance engaged in a "deliberate principled

reasoning process." *Baker,* 929 F.2d at 1144.  Thus, by failing to provide rehabilitative services with all relevant medical records, Reliance undermined the integrity of the REA upon which it relied, which in turn undermines the integrity of its decision-making process.

Reliance also hired a third-party consultant to conduct a file review as part of the appeals process.  The insurance policy allowed Reliance to require Pemberton to undergo an independent medical examination (IME) (AR 164).  Although relying on a file review does not necessarily indicate that a defendant acted improperly, "the failure to conduct a physical examination – especially where the right to do so is specifically reserved in the plan – may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination."  *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005).  This is particularly true where a reviewer does not explain why it disagrees with an SSA determination.  *Bennett*, 514 F.3d at 555.

Dr. Craig Bogen conducted the file review.  He stated that Pemberton appeared to have "chronic, frequent, and refractory episodes of vertigo that would disable him from performance of his normal work duties" (AR 326).  Dr. Bogen also noted that even though several diagnostic studies and physical examinations were largely unremarkable, it is not unusual for intermittent vertigo to occur "with a relative paucity of demonstrable abnormalities on conventional testing" (AR 327).  He concluded that "sedentary work restrictions with limited neck movement and

upper extremity physical exertion are supported." *Id.*

The parties disagree over the meaning of Dr. Bogen's conclusion, and the record does not shed light on whether "sedentary work restrictions with limited neck movement and upper extremity physical exertion" would comport with the restrictions of the second REA.  Interestingly, Reliance argues that this diagnosis is more restrictive than the no "construction, climbing, bending [or] twisting" limitations identified by plaintiff's own treating physician, Dr. Johnson. If Dr. Bogen's recommendation was truly more restrictive than Dr. Johnson's, and if the REA was based on Dr. Johnson's statement alone, it may not reflect Pemberton's physical limitations.  In other words, it is unclear whether Dr. Bogen's statement is consistent with Reliance's decision or whether Dr. Bogen provided a more restrictive assessment that was simply ignored.

The role of this court is "to review the basis for the decision actually made by the plan administrator, not to provide an adequate basis where none was offered."  *Glenn*, 461 F.3d at 672.  Thus, even if Reliance's determination could be supported by the medical evidence, the actual explanation provided by Reliance raises several unanswered questions regarding how Reliance reached its decision. These issues, in combination with the failure to discuss the SSA determination, the conflict of interest, and the possibly inaccurate REA, ultimately tip the balance in favor of remand.

E.     **Reliance's Untimely Answer**

Pemberton argues that he is entitled to summary judgment because of the defendant's failure to file an answer on time. Pursuant to Rule12(a)(4) of the Federal Rules of Civil Procedure, the defendant's answer was due by October 10, 2008, 10 days after this court denied its motion to dismiss. The defendant filed its answer on March 31, 2009, approximately 5 months late, and 4 days after the plaintiff filed the instant motion to dismiss. The defendant did not seek an extension of time to file its answer, nor has it provided any explanation to this court regarding the untimeliness of its answer. Aside from failing to file an answer, the defendant has vigorously defended this case since its inception. *See Wolf Lake Terminals, Inc. v. Mutual Marine Insurance Co.*, 433 F. Supp. 2d 933, 942 (N.D. Ind. 2005). The defendant's failure to file an answer has not prejudiced the plaintiff or otherwise delayed this litigation. Furthermore, the defendant has since filed its answer (R. 43). For these reasons, the court declines to grant summary judgment for the plaintiff on this ground.

### III. Conclusion

Taken as a whole, the factors support remanding this case for further consideration. Reliance failed to consider Pemberton's SSA determination at each stage of its decision-making process. This failure increases the significance of Reliance's conflict of interest inherent in its determining eligibility and also being the entity that pays benefits. The fact that the second REA was based on insufficient information further undermines the integrity of Reliance's decision-making process.

And although the medical evidence may ultimately support Reliance's decision, the explanation provided failed to sufficiently address ambiguities in the record. For these reasons, the court will remand this case to Reliance for further consideration. Accordingly,

**IT IS ORDERED** that the cross motions for summary judgment (R. 42, 44) are **DENIED** and this matter is **REMANDED** to Reliance for further consideration in accordance with this opinion.

Signed on January 5, 2010

*Jennifer B. Coffman*

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY